STOULIG, Judge.
This appeal involves a buyer’s suit to obtain a refund of the purchase price of a new trailer that allegedly collapsed during the first trip made with it. Plaintiff, Armand J. Rey, filed a redhibitory action against the seller, Robert E. Cuccia (doing business as Trade Ville Camper Sales), and the manufacturer, Yellowstone, Inc. Alternatively, relief was sought on the theory that both defendants had breached their warranty, which provides the trailer “ * * * offers truly rugged, lasting and dependable travel comfort * * Both defendants denied the trailer was defective at the time of its delivery to plaintiff. The seller filed a third party action against the manufacturer, claiming reimbursement of any amount for which it might be cast in judgment. The trial court rendered judgment dismissing plaintiff’s suit and the third party demand for indemnification. Only the plaintiff has appealed.
On May 27, 1971, plaintiff purchased an 18-foot camper trailer from Cuccia for $2,510.15. This price included the furnishing of a trailer hitch and its installation on plaintiff’s automobile by the seller. Plaintiff’s car was returned to him on the afternoon of the same day that it was left with Cuccia for the installation of the hitch.
The next day, plaintiff drove the trailer from the seller’s lot to his home. It remained in his driveway until the following day when Mr. Rey, accompanied by his wife and three other members of his family, towed the camper to Dauphin Island, Alabama, for the weekend.
They departed the campsite at noon on Sunday. After crossing the bridge over the Bay of St. Louis in Mississippi, the plaintiff stopped his automobile and directed his wife to drive for the purpose of gaining experience in towing the camper in anticipation of their planned camping vacation in Florida.
Mrs. Rey entered the extreme right lane and proceeded toward New Orleans at an approximate speed of 30 to 35 miles per hour. Highway traffic was light and several vehicles passed on her left. Admittedly, weather conditions were ideal, with no unusual wind velocity.
She had driven approximately four miles when immediately after a vehicle passed on her left the trailer began to swing from left to right, “pulling all over the highway.” Her husband instructed her to keep the car “straight down the road” until she could slow and stop. She finally stopped in the right emergency lane.
On inspecting the trailer, plaintiff noted the rear bumper was “down” and the frame was bent. He drove very slowly to New Orleans, towing the damaged camper to Cuccia’s lot. Though ultimately moved to the plaintiff’s home, it is undisputed that the depositing of the trailer on the seller’s lot constituted a tender of its return.
As a result of this incident, the exterior and interior of the camper were heavily damaged, primarily in the rear section. Plaintiff attempted, through a process of elimination, to prove the design and construction of the trailer were defective. Mr. Ray LeCron, president of an automobile body and fender repair business, appearing on behalf of plaintiff, testified the chassis, or frame, that supported the trailer was constructed of metal %2nds of an inch thick and that it was tackwelded to the trailer at 18-inch intervals. Plaintiff did not attempt to qualify this witness as an expert and limited his questions to facts concerning construction personally observed by LeCron. On cross-examination by the manufacturer, he stated that in his opinion the cause of damage was “ * * * the chassis collapsed over the wheel, from some sort of structural inefficiency in the *69 rear.” This opinion was properly discounted in view of the fact that this witness admitted he had no prior experience either in the design or repair of camper trailers; that his knowledge was limited to boat trailers; that he did not observe any vice or defect in the chassis; and that he did not examine comparable trailers to ascertain the customary gauge of metal used in their chassis or the method of welding used in their assembly.
Plaintiff introduced the testimony of Alvin Coffee, who qualified as an expert in the manufacture, function and construction of springs. He testified that in his examination of the springs on plaintiff’s trailer he found them to be of the conventional type, of good heavy duty, with good temper and in very good condition. He found no evidence of “bottoming out” (the spring coming in contact with the chassis) nor damage to the U-bolt connecting the spring to the axle, nor had loss of temper occurred. We agree with the trial judge’s apparent conclusion that this testimony did not establish a structural defect or that the frame collapsed.
Defendants called two expert trailer repairmen (Ronald Petre, on behalf of Cuc-cia, and Lawrence Drudge, for Yellowstone, Inc.), who testified in substance that the damage they viewed was similar to that occurring when an inexperienced driver overcompensates for a swaying trailer. They testified in effect that a passing vehicle, usually a large bus or truck, tends to suck the trailer toward it, and after it passes a certain point, it releases it and the trailer begins to sway. They further stated that the damage viewed on plaintiff’s trailer is similar to that which occurs when an inexperienced diiver over-reacts to the swaying of the trailer, thus losing control over its movement.
Mr. Drudge, production manager of the manufacturer and its test driver, often ventured beyond the field of expertise in which he was qualified. But one solid fact established through his testimony was that the trailer hitch was improperly installed. The top of the ball was 24 inches from the ground rather than 18 inches as recommended by Yellowstone Owner’s Guide. Drudge explained this would cause a difference in weight distribution between the towing vehicles and the camper, tending to cause an exaggeration in the sway of the trailer. He stated the four primary causes of swaying are (1) improperly hitched tow; (2) high winds; (3) suction from fast-moving passing vehicles on highways; and (4) inexperience of the driver. The last he termed the most frequent cause.
From the summarized evidence we affirm the trial court’s finding that .plaintiff failed to prove any defect in the design or manufacture of the trailer. Further, we conclude the improperly installed trailer hitch did not constitute a vice sufficient to support an action in redhibition.
Plaintiff testified that he drove the camper at a speed not exceeding 40 miles per hour (as instructed by the seller) over a smoothly paved highway. He experienced no difficulty while he was driving. Since plaintiff towed the .trailer more than 200 miles with no problems of unusual swaying, we do not attribute Mrs. Rey’s loss of control to this factor.
It should be noted that plaintiff had been employed as a fleet mechanic for Chal-mette Laundry for many years. His wife’s experience was limited to towing a boat trailer on several occasions.
 The fact that plaintiff drove the trailer in excess of 200 miles without incident and his wife only drove four miles before the mishap occurred indicates it was caused by her inexperience in towing a camper of this size. In this connection we note from the testimony of its production manager, Mr. Drudge, that Yellowstone was aware of difficulties drivers unaccustomed to towing trailers encounter with swaying caused by passing vehicles. Its failure to apprise purchasers of this problem in any of the publications, manuals, or *70 brochures may constitute a negligent act of omission. But any liability stemming from Yellowstone’s failure to caution the inexperienced driver could only be brought in tort. Under LSA-C.C. art. 2315, the plaintiff must establish the damage suffered was causally connected with the act of commission or omission of the tort-feasor. In this case, plaintiff admitted he did not read the owner’s manual before making the trip to Dauphin Island, and his wife was not questioned about her knowledge of its contents. In the absence of any proof to the contrary we can only presume that she too failed to read the owner’s guide. Obviously, even had the manufacturer included such a warning in its buyer’s manual, neither Mr. nor Mrs. Rey would have been „ aware of it. Therefore, we cannot conclude the failure to warn was a proximate cause of the accident.
Nor is the manufacturer liable under a contract theory of breach of an implied warranty. Our jurisprudence limits this implied warranty -to damage caused by a defect in design, fabrication, or manufacture of the instrument or article. There is no evidence to establish any inherent defect or vice in the trailer itself. See Leathem v. Moore, 265 So.2d 270 (La.App. 1st Cir. 1972), and cases cited therein.
That the trailer may encounter swaying sufficient to create a problem to an inexperienced driver is not a fault in the fabrication, manufacture, or design in the sense that the product is rendered unsafe or unsuitable for the purpose for which it was constructed. In view of the circumstance of being under the control of an experienced and over-reacting driver, the excessive swaying of the trailer cannot be urged as a defect or vice sufficient to sustain an action in redhibition.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are to be borne by appellant.
Affirmed.
LEMMON, J., dissents with written reasons.