298 So.2d 840 (1974)
Armand J. REY, Plaintiff-Appellant-Relator,
v.
Robert E. CUCCIA, d/b/a Trade Ville Camper Sales and Yellowstone, Inc., Defendants-Appellees-Respondents.
No. 54195.
Supreme Court of Louisiana.
June 10, 1974.
Rehearings Denied August 30, 1974.
*842 Leonard B. Levy, Michael Osborne, Dufour, Levy, Marx, Lucas & Osborne, New Orleans, for plaintiff-appellant-relator.
Daniel A. McGovern, IV, Adams & Reese, John T. Cooper and W. Michael Hingle, New Orleans, for defendants-appellees-respondents.
TATE, Justice.
The buyer ("Rey") sues to recover the purchase price paid for a camper trailer, alleging that, because of redhibitory defect, it had come apart after a short period of use. Made defendant are the seller ("Cuccia") and manufacturer ("Yellowstone") of the trailer. The court of appeal affirmed the trial court's dismissal of the action, 284 So.2d 66 (La.App. 4th Cir. 1973), certiorari granted, 288 So.2d 352 (La. 1974).

1.
The plaintiff Rey purchased the trailer from Cuccia on May 27, 1971, and drove it to his home, a distance of less than ten miles. It was not used again until June 4, eight days later, when Rey and his family drove to Dauphin Island, Alabama, a distance of 125 miles. On the return trip to New Orleans two days later, the trailer commenced swerving back and forth on the highway. After stopping, Rey found that the trailer body had come loose from its frame, the frame was buckled, and the right rear of the trailer body was down toward the ground.
At the time of this serious breakage, the trailer had been used in total for just slightly over 200 miles, all on major paved highways.
The previous courts held that the buyer had failed to prove that any redhibitory defect had caused the break-up of the trailer so soon after its purchase. They felt that, since the collapse occurred just four miles after the buyer's wife commenced driving the vehicle, it is likely that her inexperience may have been the cause of the mishap.
In our opinion, the previous courts held the buyer to too strict a burden in rejecting his proof of a redhibitory defect as the cause of the break-up during normal use of the recently purchased trailer. Further, as we shall note, there is absolutely no evidence that the driving of the buyer's wife contributed to the collapse.

2.
In Louisiana sales, the seller is bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the product's intended use. Civil Code Articles 2475, 2476, 2520; Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972). The seller, of course, can limit this warranty by declaring to the buyer the hidden defects at the time of the sale, Article 2522, or can otherwise limit his obligations as seller, providing he do so clearly and unambiguously, Article 2474.
A redhibitory defect entitling the buyer to annul the sale is some defect in the manufacture or design of a thing sold "which renders it either absolutely useless, *843 or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." Article 2520. Upon proof of such a defect, the buyer is entitled to annul the sale and recover the purchase price, rather than being limited to recovering the cost of curing any such substantial defects. Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.1973).
The buyer must prove that the defect existed before the sale was made to him. Article 2530. However, if he proves that the product purchased is not reasonably fit for its intended use, it is sufficient that he prove that the object is thus defective, without his being required to prove the exact or underlying cause for its malfunction. J. B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693 (1949); Crawford v. Abbott Automobile Co., Ltd., 157 La. 59, 101 So. 871 (1924); Stumpf v. Metairie Motor Sales, Inc., 212 So.2d 705 (La.App. 4th Cir. 1968); Fisher v. City Sales and Service, 128 So.2d 790 (La.App. 3d Cir. 1961).
The buyer may prove the existence of redhibitory defects at the time of the sale not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of the sale. Fisher v. City Sales and Service, 128 So.2d 790 (La.App. 3d Cir. 1961); Mattes v. Heintz, 69 So.2d 924 (La.App.Orl.1954); Standard Motor Car Co. v. St. Amant, 134 So. 279) La.App. 1st Cir. 1931). As stated in Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151, 155: "* * * proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows the fact or causation sought to be proved is more probable than not."
If the defect appears within three days following the sale, it is presumed to have existed before the sale. Article 2537. However, even where the defect appears more than three days after the sale (as here, when it appeared on the second day of use, but ten days after the sale), if it appears soon after the thing is put into use, a reasonable inference may arise, in the absence of other explanation or intervening cause shown, that the defect existed at the time of the sale. Andries v. Nelson, 46 So.2d 333 (La.App. 1st Cir. 1950); Standard Motor Car Co. v. St. Amant, 134 So. 279 (La.App. 1st Cir. 1931). See, for similar principle, when a constructed thing fails shortly after being put into use. Joyner v. Aetna Casualty & Surety Co., 259 La. 660, 251 So.2d 166 (1971).

3.
Tested by these standards, the buyer Rey met his burden of proving that a redhibitory defect existed at the time of the sale. We find no difficulty in holding the seller Cuccia liable for such redhibitory defect. (The liability of the manufacturer Yellowstone presents a more difficult issue. See part 5 below of this opinion.)
Rey purchased the 18-foot 2700-pound camper trailer from Cuccia on May 27, 1961. The price of $2510.15 included the installation, at Cuccia's direction and order, of a trailer hitch on the Rey automobile which would be used to haul the trailer. Improper installation of this hitch, as will be noted, is one of the factors assigned as causing the break-up of the trailer.
As earlier stated, the trailer breakage occurred when the vehicle had been used slightly more than 200 miles, all on good paved roads. The buyer Rey had driven the vehicle to an Alabama park, a distance of some 125 miles, and for about 80 miles of the return trip, all without incident. Three-to-four miles before the accident, he and his wife changed as drivers of the automobile hauling the trailer, in order to give her some experience preparatory to a vacation trip planned for later that summer.
*844 Mrs. Rey drove slowly, at a speed of 30-35 mph, in the right-hand lane of the Interstate highway. When another vehicle passed on her left, the trailer behind her immediately began to swing, pulling the car first to the left, then right, and then left again. The wife held the wheel straight, controlling the tandem of car and trailer, and brought it to a slow stop in the right emergency lane off the travel-lanes. At no time did the vehicles leave the highway surface. Other testimony established that neither the husband nor wife hit anything in the road while driving, nor was the trailer ever involved in any other untoward incident.
When the vehicle stopped, it was discovered that the trailer-body had pulled loose from the frame, that the frame was buckled, and that the right rear of the body dragged toward the ground. Other damage had occurred due to buckling and wrenching of the exterior and interior of the trailer. A repair estimate totalled $1,338.18, without including all the damages involved.
By a mechanic witness, the buyer Rey made some effort to prove, as cause of the incident, that the process of spot-welding the trailer body to the frame was inadequate; that the spot-welds, even if correctly done, were too far apart (18 inches) to hold the body on the frame under stress. Three to five spot-welds had, in fact, broken. The mechanic's opinion was that the frame had collapsed over the wheel, and the body had come loose from the frame, because of some structural deficiency in the rear of the trailer.
As the previous courts held, the preponderance of the evidence does not prove a structural deficiency or inadequate number of spot-welds to be the cause of the trailer break-up. (On the other hand, it does not negative the possibility that the particular three-to-five spot-welds which came loose had individually been defectively done.)
The failure to prove inadequate welding to be the cause of the trailer break-up does not defeat the buyer's cause of action. If the purchased vehicle breaks up soon after it is put into use, then this in itself (in the absence of other cause shown) may be evidence of a redhibitory defect, without the buyer being held to prove the specific cause of the vehicle's break-up.
The chief thrust of the defense against this redhibitory action is the suggestion that the vehicle-collapse occurred because Mrs. Rey, an inexperienced trailer-hauler, may have swung too sharply in an overcompensation of the sway caused when a vehicle passed her.[1] However, the uncontradicted evidence established that no such overcompensation took place. The opinion that the incident and break-up might have been caused by such driver reaction is negated by the clear testimony that the wife did not so react and that there was no misuse of the trailer during its short period of use by either of the drivers.[2]
*845 Since no abnormal and unforeseeable use or other intervening cause is proved, the collapse of the trailer during normal and foreseeable use, after only 200 miles or so after the sale, raises the strong inference that the trailer would not have collapsed in the absence of a latent defect.
Additionally, the evidence of the manufacturer's expert indicates, as a possible cause of the break-up, an improper installation of the trailer hitch on the automobile by Cuccia part of the sales transaction. Installed at 24 inches above the ground, rather than at 18 inches as specified by the manufacturer's manual, such improperly installed trailer-hitch could have caused or contributed to sway and to abnormal stresses and strains during use of the trailer.
We therefore hold that the circumstantial evidence clearly proves, at least against the seller Cuccia, that a redhibitory defect existed at the time of the sale of the trailer, which included Cuccia's installation of the trailer hitch.

4.
The buyer's case against the manufacturer Yellowstone is not as clear. In the first place, the improper hitch-installation by the seller Cuccia may cast into doubt whether any other underlying redhibitory defect existed at the time the manufacturer delivered the trailer to Cuccia. In the second place, Yellowstone had sold the trailer to Cuccia more than a year before Cuccia sold it to Reyalthough the evidence shows that, during Cuccia's possession, the trailer was not used except occasionally to move it from one part of Cuccia's lot to another, the inference is not as strong that the defect existed at the time the manufacturer Yellowstone transferred the vehicle to the seller Cuccia, as it is that the defect existed at the time of the sale, just ten days before the defect appeared after slightly over 200 miles of use.
Preliminarily, we should observe that we find no merit to the manufacturer's contention that it could not be held liable directly to the buyer for a redhibitory defect existing at the time it sold the vehicle to Cuccia. In so contending, the manufacturer relies upon the lack of privity between it and the ultimate buyer, Rey, and on the circumstance that its own sale had occurred more than a year before the re-sale by Cuccia to Rey and before the breakage.
When the sale is annulled for a redhibitory defect resulting from the original manufacture, the purchaser can recover the pecuniary loss resulting from the unusable thing sold from the manufacturer as well as the seller. Media Productions Consultant v. Mercedes-Benz of N. A., Inc., cited above. As there stated, 262 La. 80, 262 So.2d 377: "Louisiana has aligned itself with the consumer-protection rule, by allowing a consumer without privity to recover, whether the suit be strictly in tort or upon implied warranty." In effect, the consumer's cause of action, which is based upon the breach of the sale's implied warranty, is enforceable directly against the manufacturer, who himself is by law bound to the same implied warranty.
The consumer's action is enforceable against the manufacturer at the same time and at least within the same year following the sale to the consumer, Article 2534, as it is enforceable against the seller. The manufacturer is presumed to know of the defect in the thing made by him. Radalec, Incorporated v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830 (1955); Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952); George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432 (1905). The one-year limitation on redhibitory actions does not apply where the seller (manufacturer) had knowledge of the defect but failed to declare it at the time of the sale. Article 2534. In such instance, the consumer may institute the action to recover for the redhibitory defect within the year following his discovery of it. Article 2546.

*846 5.
The chief witness relied upon by Yellowstone was Lawrence Drudge, Yellowstone's production manager. He was qualified as an expert in the repair and supervision of repairs for such trailers.
He testified that he found no fault in the construction or design of the camper trailer. He did testify that the trailer hitch was improperly installed on the Rey automobile at 24 inches from the ground.
The Yellowstone manual specified that it should be installed 18 inches from the ground, and Drudge testified that in no case should it be more than 19 or 19½ inches from the ground. The reason is that a higher installation would cause a difference in the weight distribution between the two vehicles, tending to exaggerate any sway. This, of course, would cause more than normal stresses and strains and would tend, on the sway, to cause the body to compress the spring on one side or the other more deeply than if the hitch were installed at the proper height.
The witness opined that the damages to the Rey trailer were similar to those which resulted from severe swaying. The witness listed as principal causes of undue sway of a trailer which result in the need for repairs: (1) an improper hitch from towing vehicle to trailer (as here); (2) high winds; (3) the suction effect caused by high speed vehicles passing, which tends to result in overcompensation by the driver; and (4) "the biggest one we have found" is inexperience of the driver of the towing vehicle.
By the last, he explained, he meant that an inexperienced driver tended to steer the opposite way the trailer was swaying, causing it to sway back. This then may result in the driver's steering the opposite way, causing an accentuated sway back again, eventually causing the trailer body to rock over hard and sometimes to "bottom out" (the impact of the body drives the wheel through the wheel well) and, perhaps, wrench loose, similar to the damage which resulted in the present case.
The substance of Drudge's testimony is that the damage resulted when the trailer bottomed out due to severe swaying.
We may note at this point that the Yellowstone owner's guide furnished with the vehicle does not warn against such hazards, nor does the manual's suggestion as to installation of the trailer hitch ("The top of the hitch should be 18' from the ground on most models.") warn about the dire consequences resulting, according to Drudge, if the trailer is installed at higher than 18 inches. No other witness than Drudge testified as to this danger, and there is no evidence that the seller Cuccia had any reason to appreciate any undue hazard to result from installing the trailer-hitch six inches higher than recommended "for most models".
Under cross-examination, Drudge also admitted that the damage found could have resulted if, as the vehicle was swaying, the frame came loose and the trailer body fell on the wheel well.
Considering the evidence as a whole, we conclude that the preponderance of the evidence proves that the trailer break-up resulted from a defect in construction or design which existed at the time the manufacturer Yellowstone sold the trailer to the seller Cuccia.
The evidence indicates that, until it collapsed after 200 miles of use, it had been kept on Cuccia's lot without any use, except a move 50 or 75 feet or so to make room for another trailer. As previously noted, driver mal-use is not proven to be a cause of the collapse of the trailer.[3]
*847 Cuccia's improper installation of the trailer hitch may have contributed to the severe swaying and to unusual stresses and strains during the 200 miles of customer use. Nevertheless, Yellowstone should not be exonerated from liability for defective functioning of the camper-trailer because a trailer-hitch, necessarily contemplated by a sale of the camper-trailer, was installed six inches higher than weakly recommended by the manual. There is no warning that there might be such damage occasioned as was here by the failure to so install the hitch. If the trailer were so constructed that such a slight deviation from a recommended procedure of installation of the hitch would cause this type of damage, then this constitutes a defect for which the manufacturer would be responsible, absent at least some warning of the danger involved.
The evidence, in effect, negatives any other than a redhibitory defect in the manufacture or design of the trailer as the cause of the break-up of the trailer, even though Cuccia's improper installation of the trailer-hitch may have contributed to the vehicle's malfunctioning.

6.
Under the 1968 amendment to Article 2545: "The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages." (Italics ours.) A manufacturer is presumed to know of the defects of the products he sells. In this instance, the retailer Cuccia, who ordered the installation of the trailer hitch as part of his sale of the product, is presumed to know of the defect in this installation. Therefore, both Cuccia and Yellowstone are liable for such attorneys' fees.
The evidence in the record justifies an award of attorneys' fees in the amount of one thousand dollars.

Conclusion
The buyer is therefore entitled to recover the sum of $2510.15, the purchase price of the vehicle[4], plus $1,000 attorneys' fees. The buyer is entitled to recover this amount from the seller and the manufacturer as solidarily liable.
Accordingly, there will be judgment in favor of the plaintiff, Armand J. Rey, and against the defendants, Robert E. Cuccia and Yellowstone, Inc., holding them liable in the amount of three thousand five hundred and ten and 15/100 ($3,510.15) dollars, together with all costs and legal interest thereon from date of judicial demand, conditioned upon the return of the camper-trailer to Cuccia.
Reversed and rendered.
SUMMERS, J., dissents for the reasons assigned.
MARCUS, J., recused.
SUMMERS, Justice (dissenting).
Both lower courts found, and I agree, that there is no evidence to establish any inherent defect or vice in the trailer. Each of the courts below attributed the accident to the suction effect caused by a high speed vehicle passing, which tends to result in over compensation by the driver. *848 They found that Mrs. Rey was inexperienced and over-reacted to the swaying caused by the passing vehicle. This conclusion is corroborated by the absence of incident during the first 125 miles of the trip during which Mr. Rey, an experienced driver, was at the wheel. The laborious effort of the Court's opinion to de-emphasize these facts is unconvincing to say the least. The case presents nothing but a factual question. This Court is not warranted in overruling both courts on this record. I agree with the opinion of the Court of Appeal. See 284 So.2d 71. I would uphold that adjudication.
NOTES
[1] The defendants' witnesses testify that this might cause too sharp a shift of stress and weight, causing the vehicle body to "bottom" on the wheel-axis as the spring flexed, resulting in a severe impact which caused the body to come loose from the frame as well as the other damage.
[2] If indeed the trailer was so sensitive to sway when used by an inexperienced driver, this itself might a redhibitory defect. As the dissenting judge in the court of appeal stated, 284 So.2d 71: "Even if driver reaction to unexpected sway contributed to the trailer collapse in the present case, the manufacturer who knew of this possible hazard was obliged to warn its prospective users (who were not aware of the hazard). Absent this warning, a normal driver reaction should be considered normal use. The manufacturer did not offer the trailer for sale only to persons experienced in driving trailers. If the normal reaction of an inexperienced driver resulted in a collapsed trailer, then the manufacturer should not be allowed to defend on the basis that the trailer collapsed in abnormal use."
[3] Indeed, if such should happen within four miles, because another vehicle passed an inexperienced driver, such condition should be a redhibitory defect in itself, in the absence of strong warning by the manufacturer that the vehicle was sold only for use to experienced drivers, not to the general public, or of strong caution of the dangers involved in driving on the highways when passed by other vehicles.
[4] The purchase price included thirty dollars or so for installation of the trailer hitch. Although the manufacturer may not have been liable to reimburse the buyer for this as part of the purchase price, as a seller-manufacturer, with presumed notice of the defects of the vehicle sold by it, Yellowstone is also responsible for damages, such as this item, resulting to the buyer because of the defective design or construction. Article 2545.