SAMUEL, Judge.
Plaintiff filed this suit against the defendants, Charles Flanagan, d/b/a Cadillac Plastic & Chemical Co., from whom he, purchased 26 sheets of one-quarter inch thick Plexiglas, and Rohm and Haas Company, the manufacturer on the Plexiglas sheets, seeking to rescind the contract of sale and damages in the amount of $3,929.-80.
Both defendants answered, denying liability. In addition, Flanagan filed a third party petition against Rohm and Haas seeking indemnity for any sums which he might he compelled to pay to the plaintiff.
After a trial on the merits, there was judgment on the main demand in favor of plaintiff and against both defendants, in solido, in the sum of $2,500 and, on the third party demand, in favor of the third party petitioner, Flanagan, and against Rohm and Haas, in an amount equal to whatever Flanagan pays in satisfaction of the judgment against him on the main demand. Both defendants have appealed, Rohm and Haas from the entire judgment and Flanagan only from that part of the judgment rendered against him.
Plaintiff, a general contractor, completed construction of his own home on Folse Drive in Metairie, Louisiana, in December, 1971 and January, 1972. The home includes a swimming pool which initially had been contemplated to be open at the rear of the house. However, after construction had begun, plaintiff decided to enclose the pool with a glass structure.
Plaintiff erected a wooden frame and appropriate supporting members, but after encountering difficulties and unexpected expense with the use of glass, he decided to seek an alternative material. He visited the business premises of the defendant Flanagan and there spoke to Flanagan and an employee, Eldridge Serpas. Plaintiff told both Flanagan and Serpas he intended to enclose a pool with Plexiglas sheets, and they showed him a brochure furnished by Rohm and Haas which contained a picture of a swimming pool enclosed with Plexiglas. Plaintiff contends on the basis of the picture shown to him and in reliance on the statements by Flanagan and Serpas, he purchased the Plexiglas sheets and commenced to install them on the wooden framework already erected for glass. He was unable to testify when he was furnished a copy of the booklet. However, both Flanagan and Serpas testified without equivication he was furnished the booklet at the time of his initial visit to Flanagan’s establishment.
Shortly after the installation of the Plexiglas, there were two minor leaks in the roof of the pool enclosure. Plaintiff attributed these to improper caulking, and efforts at recaulking proved fairly successful. During the summer of 1972 he began to experience more severe and more repeated episodes of leakage through cracks between the fiberglass sheets. Photographs introduced by plaintiff show the Plexiglass began to show concave indentations, and it was explained that when water collected in these indentations, the edges of the Plexiglas were pulled upward and away from each other, thereby allowing water to come between and under the sheets of Plexiglas and leak into the pool enclosure. There is no contention by plaintiff that there is any defect per se in the Plexiglas sheets themselves.
As has been pointed out, plaintiff is a general contractor. He obtained a discount because of that fact when he purchased the Plexiglas material. He nevertheless denies familiarity with the properties of Plexiglas. However, the booklet with which he was furnished from the inception of the transaction contains extensive detail on the properties of Plexiglas and the proper manner for its installation. The booklet is sufficient to put even a layman untrained in building techniques on notice that the horizontal installation of Plexiglas is entirely different from the vertical installation of *666 that material, with the normal horizontal installation involving a dome or bubble configuration being given to Plexiglas sheets.
The necessity for a dome shape horizontal installation of Plexiglas is repeated throughout the booklet furnished plaintiff by defendant. His testimony reflects he did not read the entire booklet prior to installing the Plexiglas. For example, the booklet emphasizes the necessity for channel installation of Plexiglas, particularly in a horizontal configuration, to allow for expansion and contraction in atmospheric conditions. On the contrary, plaintiff fastened the Plexiglas to the wooden framework for the pool enclosure by screws or bolts which do not afford the Plexiglas the freedom to expand or contract. The major deviation by plaintiff from the recommended installation procedures was his failure to install the Plexiglas sheets with a domed configuration, since the Rohm and Haas booklet made very clear that Plexiglas would “deflect” or “indent” downward of its own weight when installed horizontally, and would be further deflected by the weight of rain, snow, or the force of wind. The booklet repeatedly stated the necessity for a domed installation in a horizontal position because of the flexible property of Plexiglas, and even a cursory reading of the booklet should have indicated this to plaintiff.
With regard to[1] the liability of Rohm and Haas, the manufacturer of the Plexiglas, plaintiff cites the case of Rey v. Cuccia} as authority for the proposition that if the object of a sale was constructed or manufactured in such a way that if a deviation from the recommended installation procedure, as set forth in the manufacturer’s manual accompanying the object, would cause damage or make the object unfit for its intended use, such construction of the manufacturer would constitute a defect for which the manufacturer would be responsible, absent at least a warning of the danger involved.
We do not concur in plaintiff’s interpretation of Rey v. Cuccia as it might apply in this litigation. However, irrespective of the holding in that case, it is clear in the present case the manufacturer, Rohm and Haas Company, gave more than ample warning of the consequences of the installation of Plexiglas in a manner deviating from its instruction booklet. The booklet is so detailed we can only conclude plaintiff did not bother to read it before he began installation. Some portions of plaintiff’s testimony tend ho confirm this conclusion. Accordingly, we find no liability on the part of Rohm and Haas.
The other defendant, Flanagan, is in a different situation than Rohm and Haas. As vendor, the articles of the Civil Code on rehibitory defects[2] place on the seller an implied warranty that the object sold is suitable for its intended use. Plaintiff contends he told Flanagan and Serpas his intention to use flat sheets of quarter inch Plexiglas in a horizontal installation to cover his swimming pool. As such material is not suitable for a horizontal covering over a pool, plaintiff contends defendant Flanagan violated the implied warranty of fitness.
Plaintiff relies primarily upon a photograph of a swimming pool enclosed by Plexiglas panels in the brochure given him. However, the installation shown him by Flanagan and Serpas bears no resemblance to the installation made by plaintiff. The installation in the booklet is made with a bubble configuration to the Plexiglas sheets, involves channel installation, and also involves a roof slope which appears to be close h> 45°. On the other hand, plaintiff’s installation was made without a domed configuration, was installed in a fixed manner without the use of channel *667 installation, and had a very slight slope, estimated by plaintiff to be three inches per foot.
The record satisfies us that plaintiff did not inform Flanagan or Serpas of the precise installation he intended to make. On the contrary, it appears plaintiff merely stated he wished to enclose his pool with Plexiglas, and did not bother (probably through lack of knowledge of the properties of Plexiglas) to inform them of the framed support which he had already constructed for a glass installation. Our reading of the record convinces us that Flanagan and Serpas did not undertake to advise plaintiff as to the propriety or impropriety of the use of Plexiglas in his installation. They merely sold him the, Plexiglas sheets and furnished him well in advance of their use with the booklet mentioned above, which contained detailed and explicit statements regarding the properties of Plexiglas and the difficulties involved in a horizontal installation of that material. Flanagan and Serpas were not given sufficiently detailed information of the purpose for which, and the manner in which, the material was intended to be used to afford them the opportunity of warning defendant of difficulties he might encounter in such use.
Plaintiff cites authority for the proposition that in all sales there is an implied warranty that the object sold is fit for the purpose intended, which warranty can only be avoided by express and explicit waiver.[3] But in our opinion Flanagan, the vendor of the building material in suit, complied with all duties imposed upon him in the sale of a construction material by furnishing the buyer and intended user of the material with sufficiently detailed instructions for its use as to place a reasonable man, particularly the present plaintiff who is a general contractor, on notice of the proper installation methods.
 We cannot conclude a purchaser can rely on a single photograph from a single page of a detailed instruction manual to justify recission of the sale for failure of building material when a reading of the entire booklet would have placed him on notice of his improper use of the material. However, in the present case even if plaintiff had relied only on the photograph contained in the booklet of a pool enclosure, he should have readily seen the domed configuration of the Plexiglas sheets, the very steep roof incline, and the channel installation used in the photographed enclosure. The pool enclosure in the photograph bore no resemblance to plaintiff’s pool enclosure, and there is no evidence he conveyed this dissimilarity to Flanagan or Serpas. Hence, plaintiff cannot now say that defendant knew of his intended installation and that Plexiglas was not suitable for it. On the contrary, Flanagan and Serpas only knew that plaintiff intended to use Plexiglas for a pool enclosure. Consequently, there was no violation of the warranty of fitness for the purpose for which the material was sold.
We conclude the Plexiglas used by plaintiff displayed the properties and the qualities which it was stated to have, in the booklet, and the defective pool enclosure was the result of plaintiff’s failure to read the booklet and to effect installation of the Plexiglas in accordance with its express directions.
For the reasons assigned, the judgment appealed from is annulled and reversed and it is now ordered that there be judgment, on the main demand, in favor of the defendants-appellants, Charles Flanagan, d/b/a Cadillac Plastic Company and Rohm and Haas Company, and against plaintiff-appellee, Edmond P. Wolfe, dismissing the latter’s suit. Costs in both courts are to be paid by the plaintiff-appellee.

REVERSED AND RENDERED.

. 298 So.2d 840 (S.Ct.1974).

. See Articles 2520, et seq.

. LSA-C.C. Arts. 2520, 2541, 2542; California Chemical Company v. Lovett, La.App., 240 So. 2d 633.