386 So.2d 681 (1980)
Darryl HOYCHICK, Plaintiff-Appellee,
v.
GULF STATES TOYOTA, INC., Defendant-Appellant.
No. 7551.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1980.
Rehearing Denied August 22, 1980.
*682 Bernard, Cassisa, Babst & Saporito by Joe Palermo, Metairie, for defendant-appellant.
Young & Burson, M. Terrance Hoychick, Eunice, for plaintiff-appellee.
Before GUIDRY, CUTRER and DOUCET, JJ.
DOUCET, Judge.
This is a redhibitory action in which the plaintiff, Darryl Hoychick, sued Gulf States Toyota, Inc. and Toyota Motor Sales, U.S.A., Inc. to obtain a reduction of the purchase price of a 1978 Toyota Corolla Station Wagon, plus damages and attorney's fees. Both defendants denied liability. After a trial, the district court rendered judgment in favor of plaintiff and against Gulf States Toyota, Inc. in the amount of $700.00, representing a reduction of the purchase price, $600.00 as damages incurred by the rental of a replacement vehicle, and $1,186.00 for attorney's fees. Plaintiff's claim against Toyota Motor Sales, U.S.A., Inc. was dismissed at his costs. Gulf States Toyota, Inc. appeals. No appeal has been taken from the dismissal of Toyota Motor Sales, U.S.A., Inc.
The record shows that on May 28, 1978, plaintiff purchased a 1978 Toyota Corolla station wagon from Bubba Oustalet Ford & Toyota in Jennings, Louisiana. The car had been manufactured in Japan by Toyota Motor Sales Co., Ltd., a foreign corporation not qualified to do business in the United States. It was imported by Toyota Motor Sales, U.S.A., Inc., which distributes all Toyotas sold in the United States through twelve regional distributors. Gulf States Toyota, Inc. one of the regional distributors, had received the car upon its arrival at the Port of Houston, Texas and delivered it to the dealer.
On October 26, 1978, plaintiff changed the car's engine oil and oil filter. When he removed the original oil filter, which had been installed at the factory, a circular rubber gasket remained attached to the motor mount. Unaware that the oil gasket had not been discarded with the filter, plaintiff installed the new filter and gasket over it. A gap was present between the two gaskets, which allowed all of the oil to escape. Consequently, the motor "burned up" after plaintiff's wife had driven the car a short distance.
Plaintiff brought this suit, seeking a reduction of the purchase price in an amount sufficient to cover the cost of replacing the damaged engine. He alleges three bases for finding that the car contained redhibitory defects. First, he argues that the design of the original oil filter was defective, because the gasket was not permanently affixed to the filter. Second, he argues that there was a manufacturing defect, because the adherence of the gasket to the motor mount had resulted either from its improper lubrication or from overtorquing of the oil filter when it was installed. Third, he argues that the instructions for changing the oil in the Owner's Manual were inadequate, because they did not alert the owner of the danger of oil loss as a result of a gasket remaining attached to the motor mount.
The record does not contain the trial judge's reasons for judgment. However, he obviously found that the car contained a redhibitory defect, since he rendered judgment in plaintiff's favor. On appeal, Gulf States Toyota, Inc. argues that the trial judge erred in the following respects: (1) in holding it liable in redhibition despite the lack of privity between it and plaintiff, (2) in finding that the car contained a redhibitory defect, and (3) in allowing legal interest on the award of attorney's fees.

*683 LACK OF PRIVITY
In the landmark case of Media Production Consultants, Inc. v. Mercedes-Benz of North America, 262 La. 80, 262 So.2d 377 (1972), our Supreme Court established the rule that both the manufacturer and the dealer may be held liable in solido to the purchaser in a redhibitory action, despite the lack of privity between the purchaser and the manufacturer. See also, Rey v. Cuccia, 298 So.2d 840 (La.1974); Reeves v. Great Atlantic & Pacific Tea Co., Inc., 370 So.2d 202 (La.App. 3rd Cir. 1979). In Media, the Court also held that a national distributor of automobiles manufactured by a foreign corporation not qualified to do business in the United States had the same responsibility, for purposes of redhibition, as the manufacturer. See also, Moran v. Willard E. Robertson Corp., 372 So.2d 758 (La.App. 4th Cir. 1979); Perrin v. Read Imports, Inc., 359 So.2d 738 (La.App. 4th Cir. 1978). In holding the distributor liable, the Court specifically noted the following:
"The maker of Media's [the purchaser's] vehicle is a foreign corporation, not qualified to do business in the United States. In its distribution agreement, MBNA [Mercedes-Benz of North America, Inc.] assumes the total responsibility for marketing the cars in the United States and for selling, servicing, and establishing franchise dealerships. Its name appears upon the Dealers Claims Policies and Procedures Manual, the owner's service policy, and the owner's automobile manual.
"It operates a vehicle distribution center and inspects, adjusts, and prepares the automobiles for placement in the hands of a dealer for retail sale."
262 So.2d at page 380.
In the case at hand, the responsibilities set out above were shared by Toyota Motor Sales, U.S.A., Inc. and appellant. Toyota Motor Sales, U.S.A., Inc. imports all Toyotas sold in the United States and is the final determiner of who will be granted franchise dealerships. However, the actual physical handling of the cars is done by twelve regional distributors. Nine of the regional distributors are subsidiaries of Toyota Motor Sales, U.S.A., Inc. The remaining three, one of which is appellant, are independent.
Appellant handles all Toyotas sold in a five-state area, which includes Louisiana. Its Vice-president of Service Operations, Bill Jarrett, testified that appellant operates a vehicle distribution center at the Port of Houston, Texas, where it receives Toyotas shipped from Japan and prepares them for delivery to 130 dealers in the five-state area. This preparation includes the installation of air conditioners, radios, stereos, luggage racks and mag wheels. It also involves the assembly and installation of beds on pickup trucks. Mr. Jarrett also testified that in his position as Vice-president of Service Operations, he manages service operations and supervises field personnel, handles warranty claims and customer relations, and provides technical assistance and service training for the five-state area.
Although appellant's contract with Toyota Motor Sales, U.S.A., Inc. was not introduced into evidence, it is clear from Mr. Jarrett's testimony that appellant assumed many of the responsibilities that were undertaken by the national distributor in Media. As plaintiff points out, purchasers of Toyotas in the five-state area in which appellant operates have only it to look to for important manufacturer's services, such as warranty claims and service problems that cannot be handled by the dealer. The issue of whether Toyota Motor Sales, U.S.A., Inc. should also be liable is not before us, since no appeal has been taken from the judgment dismissing it. However, we find no error in the trial judge's conclusion that appellant's activities were sufficient to expose it to the liability that would normally be imposed on the manufacturer.

FINDING OF A DEFECT
Plaintiff's first argument in support of his contention that the car contained redhibitory defects is that the design of the oil filter was defective. He presented evidence which reasonably supports his contention that if the gasket had been permanently *684 affixed to the filter, it would not have adhered to the motor mount when the filter was removed. However, the evidence also shows that all of the major manufacturers of oil filters on the market today utilize a design calling for separate gaskets and filters. It is clear that when appropriate precautionary measures are taken to insure that the old gasket is removed and discarded, such filters are reasonably safe. Plaintiff testified that he did not check the discarded filter to see if the old gasket had been removed with it. If he had done so, he would have been alerted to the fact that the gasket was still in place. He could then have simply removed it and avoided the unfortunate consequences of his failure to do so. In view of those facts, we cannot agree that the design of the filter was defective.
Plaintiff's next argument is that there was a manufacturing defect. He presented evidence establishing that improper lubrication of the gasket or overtorquing of the filter when it was installed at the factory could have caused the gasket to adhere to the motor mount. However, the evidence also shows that adherence of the gasket commonly occurs even when it is adequately lubricated and the filter is properly installed. Viewing the evidence as a whole, we find that plaintiff failed to show that it was more probable than not that faulty manufacturing techniques caused the adhesion of the gasket to the motor mount. Rey v. Cuccia, supra. Accordingly, we reject his argument that there was a manufacturing defect.
Finally, plaintiff argues that the instructions for changing the engine oil in the Owner's Manual supplied by the manufacturer were inadequate. The instructions in the Owner's Manual, which was introduced into evidence, do not warn of the danger presented if the old gasket is not removed. However, they do provide that the mounting surface should be wiped with a clean rag before the new filter is installed so that it will seat well. They also state that after putting in the new oil and filter, a check for leaks should be made while running the engine for three minutes. According to the instructions, the presence of a leak indicates faulty installation. Plaintiff testified that he carefully followed those directions and did not detect any leaks.
All of the experts who testified agreed that because of the rapid buildup of oil pressure that occurs when the engine is run, any leak should become evident within three minutes. Appellant's expert testified that in addition, the car is equipped with a warning light on the dashboard, which is designed to alert the driver to the dangerous loss of oil pressure that takes place when there is a leak. The wiping of the mounting surface, the three minute check for leaks, and the warning light are all designed to safeguard against the kind of damage that occurred in this case. According to plaintiff, the first two measures were ineffective. There was no evidence showing whether or not the warning light came on, since plaintiff's wife did not testify. However, it is clear that the likelihood that all three measures will fail is remote. In view of that fact, we believe that the instructions in the Owner's Manual were adequate.
We conclude that the trial judge's finding that the car contained redhibitory defects was manifestly erroneous. The judgment appealed by Gulf States Toyota, Inc. must therefore be reversed. Having determined that the judgment must be reversed, we do not reach the third issue raised by appellant.
For the above and foregoing reasons, the judgment of the trial court is reversed and set aside, and judgment is rendered in favor of Gulf States Toyota, Inc., dismissing plaintiff's suit. All costs of the trial and the appeal are assessed to plaintiff.
REVERSED AND RENDERED.