FRED W. JONES, Jr., Judge.
As the subrogated insurer of a public agency which suffered the loss of food stamps in a burglary, the Insurance Company of North America sued the vendor-installer of a burglar alarm system that allegedly malfunctioned due to a defect, failing to sound an alarm during the burglary in question. Also joined as a defendant was the City of Mansfield whose employees were allegedly negligent in failing to properly monitor a terminal “tie-in” to the alarm system in the city fire station.
From a judgment rejecting its demands, plaintiff appealed, contending the trial judge erred in holding that the vendor-installer of the burglar alarm system was not liable for losses sustained although .its system malfunctioned.
For the reasons hereinafter explained, we find no manifest error in the trial judge’s factual determinations upon which he based his conclusion that defendants were not liable to plaintiff.
Some time prior to 1976 the U.S. Department of Agriculture arranged with the De-Soto Parish Police Jury to assume responsibility for the distribution of food stamps in that parish. Pursuant to that agreement, the police jury established an office for this purpose in a building it owned which was located in Mansfield. A requirement of the federal government was that this building be protected by a burglar alarm system. Complying therewith, in November 1976 the police jury purchased from and had installed by Sentinel Safety Systems, Inc. (“Sentinel”), for $1,005, a burglar alarm system in the described building. The system included a terminal with warning devices at the Mansfield Fire Department.
Some time during the night of July 20 or early morning hours of July 21, 1978, the building housing the parish food stamp office was forcibly entered, property was damaged and food stamps valued at some $26,200 were stolen. After plaintiff paid the amount of the loss covered by its insurance policy, this suit was filed. The principal charge leveled at Sentinel was that failure of the burglary alarm system to sound an audible warning of the break-in, both at the burglarized building and at the city fire station, precluded apprehension of the burglar or burglars — who have never been caught.
Under the written sales contract entered into between the DeSoto Parish Police Jury and Sentinel, the latter was to install inside the food stamp office a master control panel which would activate all of the connected alarms. The source of power for the system was a rechargeable battery. An outside siren was placed on the roof of the police jury building. In the event of a break-in when the system was turned on, this device was supposed to make a noise similar to that of an ambulance — loud enough to be heard at least four blocks away. In addition, the burglar alarm system was tied into the city police-fire station through a direct telephone line.
At that time the Mansfield police and fire departments were located in a two story downtown building, with the police department downstairs and the fire department upstairs. Since there was always someone on duty in the fire department, a modular alarm connected with the burglar alarm system at the food stamp office was placed in the fire station. Upon activation of the system at the food stamp office, the device at the fire station was supposed to emit an audible alarm [a loud buzzing noise] and *917 display a visual warning [turn on a red alarm light some ⅝ inch in diameter].
Sentinel installed an outside key switch at the back door of the police jury building, enabling employees to deactivate the alarm system when they entered the building in the morning and to turn it back on when they locked the premises at the end of the working day.
Billy Wren, Sentinel’s employee who installed the burglar alarm system in question, testified that a switch placed in the back door facing and mechanical contacts on the windows would activate the alarm system [when it was turned on] if any of these were opened or broken. Further, according to this witness, cutting the direct telephone line to the fire station, tampering with the siren on top of the police jury building, or any failure of the alarm system would activate the audible and visual alarms at the fire station.
Wren stated that he tested the burglar alarm system at the time of its installation and found it was functioning properly. After that, he serviced the system from time to time, repairing metal foils on the windows and replacing a battery. On these occasions tests revealed that the system was working satisfactorily, giving the appropriate alarms. On January 13, 1978, Wren added to the system a “silent alarm” to signal a robbery during the working day. At that time the entire system was tested and found to be in proper working order.
Wren testified that he was notified immediately after discovery of the burglary, inspected the system, replaced the damaged siren which had been torn off the top of the police jury building, and replaced the back door switch. Upon visiting the fire station he observed that the red warning light on the modular alarm was glowing. When he repaired the severed direct telephone line the audible warning signal also came on.
If the system was turned on at the time of the burglary, Wren had no explanation why the audible warning device at the fire station might not have functioned as designed.
Mrs. Eleanor Washnock, supervisor of the DeSoto Parish food stamp program, testified that upon reporting to work at about 7:45 o’clock on the morning of July 21,1978 she saw lying on the parking lot the severely damaged siren which had apparently been knocked off the roof of the building. The back door of the premises was open and there were signs of forcible entry. Telephone wires from the food stamp office had been cut. Mrs. Washnock immediately notified the local police and contacted Sentinel’s office. After employees of the latter completed their repair work, the system again functioned properly. This witness corroborated Wren’s testimony that he had tested the alarm system on an intermittent basis prior to the burglary and it always worked satisfactorily.
Louie Melton and Raymond Moreno, city firemen on duty on the night of the burglary, stated that they were sleeping in the fire station quarters [on a 6 P.M.-6 A.M. duty tour] and never heard the audible alarm sound. Moreno, whose bed was only two feet from the modular alarm, testified that he had heard the alarm activate on previous occasions and that it was loud enough to wake up a soundly sleeping person. Melton, whose bed was 10-12 feet from the alarm, gave testimony to the same effect. Neither recalled seeing the red warning light on at the end of his tour of duty. However, Melton said that the light was on when he returned to the fire station that morning at 9:00 o’clock.
In written reasons for judgment, the trial judge made the factual determination that the audible warning in the fire station did not activate at the time of the burglary of the food stamp building and there was no evidence to explain why this failure occurred. He concluded:
“One can only speculate as to why the alarm did not sound.
There was evidence of false alarms having sounded from time to time during the two year period the system had been installed.
It could have malfunctioned.
*918 The party, or parties, who burglarized the building and damaged the system could have deactivated it.
There was no evidence of negligence on the part of Sentinel Safety Systems, Inc., in either installation or maintenance:...
There is no evidence of neglect on the part of either the Mansfield City Police or the Mansfield Fire Department.”
Plaintiff-appellant argues that, standing in the shoes of the vendee of the burglar alarm system, it is entitled to recover for the losses sustained as a consequence of the described burglary because Sentinel sold and installed a defective system. Cited as authority for this position is Louisiana products liability law as explicated in a number of cases, including Philippe v. Browning Arms Company et al, 395 So.2d 310 (La.1981) and Weber v. Fidelity & Casualty Co., 259 La. 599, 250 So.2d 754 (1971).
In Philippe the court explained:
“[t]he cause of action of the purchaser of a defective thing may be enforced against both the seller and the manufacturer of a thing. Media Production Consultants v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (1972). One of the obligations imposed on the seller (manufacturer) is the warranty against hidden defects of the thing sold. C.C. Art. 2476.
“There is no compelling reason to require a person injured by a defective product he has purchased to proceed either in contract or in tort. The seller’s (manufacturer’s) act of delivering a defective thing, when he knows of the defect, gives rise to delictual, as well as contractual, liability.”
The primary issue in the case at bar is factual — did plaintiff prove the burglary alarm system sold by Sentinel to the DeSo-to Parish Police Jury contained a redhibi-tory defect when it was installed?
Elaborating upon the method of proving a redhibitory defect in cases of this nature, the court in Rey v. Cuceia, 298 So.2d 840 (La.1974) commented:
“[e]ven where the defect appears more than three days after the sale- ... if it appears soon after the thing is put into use, a reasonable inference may arise, in the absence of other explanation or intervening cause shown, that the defect existed at the time of the sale.”
The court then proceeded to relieve plaintiff of the burden of proving the specific cause for a camper trailer coming apart after some 200 miles of use, since it was obvious that there was something seriously wrong with the vehicle when it was sold.
Here, the trial judge made the finding of fact that the burglar alarm system’s audible warning did not sound [at either the food stamp building or the fire station] at the time of the burglary. He then, at least by implication, determined that this malfunction was not proven to be due to a redhibi-tory defect. This conclusion is not manifestly erroneous. The malfunction occurred nearly 20 months after the sale and installation of the alarm system. No attempt was made by plaintiff to refute the evidence that the system functioned properly on a number of occasions prior to the burglary in question. Based upon our review of the record, we agree with the trial court that the reason for the failure of the audible warning to sound is a matter of pure speculation. In summary, plaintiff has proven neither by direct nor circumstantial evidence that the burglary alarm system failed to work properly because of a redhibitory defect.
Further, the record amply supports the trial judge’s determination that there was no negligence on the part of Sentinel in either the installation or maintenance of the burglar alarm system.
The fact-finding that the audible alarm did not sound at the fire station at the time of the burglary also rules out liability on the part of the City of Mansfield under the negligence and promissory estoppel theories advanced by plaintiff-appellant, as the trial court correctly held.
For these reasons, the judgment of the district court is affirmed, at appellant’s cost.