995 So.2d 676 (2008)
J. Gale CHUMLEY, Plaintiff-Appellant,
v.
TODAY'S REALTY, INC., Frank M. Cordaro and Kathie Cordaro, Defendants-Appellees.
No. 43,676-CA.
Court of Appeal of Louisiana, Second Circuit.
November 5, 2008.
Order Granting Rehearing November 25, 2008.
*678 H. Russell Davis, Arcadia, for Appellant.
Napper, Madden & Rogers by Thomas W. Rogers, Ruston, for Appellees.
Before BROWN, MOORE and LOLLEY, JJ.
LOLLEY, J.
J. Gale Chumley appeals a judgment by the Third Judicial District Court, Lincoln Parish, Louisiana, partially in favor of *679 the defendants/appellees, Today's Realty, Inc., Frank M. Cordaro and Kathie Cordaro, who, in turn, have answered the appeal. For the following reasons, we reverse in part and amend in part the trial court's judgment.

FACTS
In the fall of 2003, Dr. J. Gale Chumley agreed to sell a lot located on West Mississippi Avenue, Ruston, Louisiana, to Louisiana Tech University ("La. Tech") for the price of $145,000.00. Dr. Chumley was to retain ownership of his house located on the property. At the time, Dr. Chumley was 83 years of age and a retired professor from La. Tech. He and his family had lived in the house for approximately 47 years. Dr. Chumley has no complaint regarding his real estate transaction with La. Tech.
Seeking to move his home to a new location, Dr. Chumley sought the help of defendant Frank M. Cordaro, a local real estate agent and broker. The two men had known each other for many years since the time Cordaro was a student of Dr. Chumley's. After looking at several locations for the house, it was agreed that the house would be moved to a lot owned by Cordaro at 1303 Gains Street in Ruston (the "Gains Street lot"). Dr. Chumley was to pay the cost of moving the house in addition to the cost of improvements to prepare it for him and his wife, Helen.[1] Ultimately, Cordaro collected a total sum of $115,000.00 from Dr. Chumley for moving and renovating his home. Cordaro oversaw the move of the house as well as the renovation. Cordaro also furnished employees to perform labor in connection with the relocation and improvement of the house. The agreement of the parties was not reduced to writing.
Between December 22, 2003, and August 4, 2004, Dr. Chumley issued checks totaling $115,000.00, payable either to Cordaro or his corporation, Today's Realty, Inc. The house was actually moved to the Gains Street lot in July, 2004. The Chumleys moved back into their home in early August, 2004, and they continuously resided in the house from the date they moved in until the trial of this matter. In August, 2004, Cordaro asked Dr. Chumley for another $30,000.00 to complete the renovation of the house. Dr. Chumley refused and demanded an accounting of all funds he had previously delivered to Cordaro. From this point forward, Dr. Chumley and his family made repeated requests for an accounting from Cordaro.
In the fall of 2004, Cordaro had his attorney prepare a written document entitled "Right to Habitation." This document recognized Cordaro and his wife, Kathie, as owners of the house and lot and granted Dr. Chumley and his wife a right of habitation. Dr. Chumley refused to sign the document.
On June 27, 2005, at a meeting with Dr. Chumley and his children, Cordaro guessed that he has expended between $75,000.00 to $85,000.00 of the $115,000.00 that had been delivered to him for the relocation of the house. On July 29, 2005, Cordaro finally furnished Chumley with a handwritten accounting, without supporting documentation. This initial accounting was later supplemented by a more detailed accounting furnished on November 17, 2006. These accountings showed that Cordaro had spent $57,470.76 for the moving *680 of Dr. Chumley's home and necessary renovations.
This lawsuit was filed on February 6, 2006, and subsequently, on March 9, 2006, Cordaro issued a check to Dr. Chumley, refunding him the sum of $57,529.41. On March 13, 2006, Cordaro gave Dr. Chumley written notice to remove the house from the lot pursuant to La. C.C. art. 493. On June 17, 2006, Cordaro gave written notice to Dr. Chumley that Cordaro had "appropriated" the house, pursuant to La. C.C. art. 493. This notice further instructed Dr. Chumley to vacate the premises within five days. Subsequently, Cordaro initiated proceedings to evict Dr. Chumley from the premises in Ruston City Court; the suit was subsequently dismissed.
Following a trial of the matter, the trial court ruled partially in favor of Dr. Chumley and partially in favor of the defendants/appellees. In written reasons for judgment, the trial court determined that Dr. Chumley had not proven his claim of fraud. However, applying the doctrine of quantum meruit, the trial court entered judgment against the defendants and awarded Dr. Chumley damages in the amount of $64,000.00 for the increased value of the lot; interest in the amount of $5,263.43 for the use of Dr. Chumley's funds; and, the amount of $1,650.00 for unaccounted fundsa total monetary award to Dr. Chumley of $70,913.43. The trial court also declared the Cordaros to be the owner of the house as of June 17, 2006, and ordered Dr. Chumley to pay Cordaro $750.00 per month as rental until he vacated the property. Dr. Chumley appeals the judgment, and the defendants/appellees answer the appeal.

DISCUSSION

Fraud
On appeal, Dr. Chumley raises four assignments of error, the first two of which are related: (1) whether the trial court erred in finding that Dr. Chumley failed to prove Cordaro committed fraud; and (2) as a result, whether the trial court erred in failing to order the conveyance of the lot by Cordaro to Dr. Chumley for its unimproved fair market value. Specifically, Dr. Chumley argues that he was detrimentally induced to move his home and provide the funds for moving by fraudulent acts, misrepresentations and suppression of the truth by Cordaro. Dr. Chumley claims that Cordaro induced him to believe that ownership of the Gains Street lot would be turned over to Dr. Chumley; in fact, Dr. Chumley claims he made it plain to Cordaro that he wanted to own the lot. Dr. Chumley argues that after Cordaro received Dr. Chumley's $115,000.00 and the house had been moved to Cordaro's lot, only then did Cordaro inform him that he could not own the lot. Dr. Chumley maintains the moving of his house onto Cordaro's lot was only accomplished through Dr. Chumley's trust of Cordaro and his acts, omissions and misrepresentations; thus, Cordaro acted fraudulently and the Cordaros should be required to convey the lot to Dr. Chumley for its fair market value of $6,000.00. We agree.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Cole v. Department of Public Safety & Corrections, 2001-2123 (La.09/04/02), 825 So.2d 1134; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes *681 that the finding is clearly wrong. Stobart, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole, supra; Rosell v. ESCO, 549 So.2d 840 (La. 1989). However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error even in a finding purportedly based upon a credibility determination. Cole, supra; Rosell, supra. That is unequivocally the case here.
A contract is formed by the consent of the parties. La. C.C. art.1927. However, consent may be vitiated by error, fraud, or duress. La. C.C. art.1948. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Shelton v. Standard/700 Associates, XXXX-XXXX (La.10/16/01), 798 So.2d 60. Fraud may also result from silence or inaction. La. C.C. art.1953. Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent. La. C.C. art.1955. Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. However, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations. La. C.C. art.1954. Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957.
As stated, Dr. Chumley maintains that Cordaro led him to believe, by his silence, that the two men had an agreement whereby Cordaro would convey his lot to Dr. Chumley once his house had been moved to Cordaro's lot. Notably, the trial court made the following findings of fact:
A major issue is what, if any, agreement these parties had concerning this transaction. Cordaro contends that, from the outset, it was agreed that Chumley would pay to move and improve the house; that Cordaro would furnish his time and expertise and labor from his employees; that Cordaro would become the owner of the house; and that Chumley would be permitted to live and reside in the premises rent free for the remainder of his life. Cordaro's testimony in this regard is not corroborated.

Chumley and his wife categorically denied ever agreeing to convey the house to Cordaro. Chumley contends that such an agreement is so one-sided in Cordaro's favor as to be illogical. The Court agrees. It simply makes no sense for Chumley to provide the house, pay for its relocation and improvement, and then only retain the right to live there for the remainder of his life, considering that he is 83 years of age.

(Emphasis added).
From our review of the record, we agree with those stated findings of the fact made by the trial court. However, we disagree with the trial court's ultimate determination, because Dr. Chumley clearly met his burden of proof that Cordaro perpetrated a fraud by his silence in this case. Here, the primary question is whether a misrepresentation or a suppression of the truth was made with the intention either to obtain an unjust advantage for one party or *682 to cause a loss or inconvenience to the other? It is unquestionable from this record that Cordaro, by his silence and in light of Dr. Chumley's repeated assertions, questions and stated intentions, misrepresented his true intention to Dr. Chumley in order to obtain an advantage for himself. The idea that Dr. Chumley would pay Cordaro $115,000.00 with the end result that Cordaro would actually own the home is a one-sided agreement that is so illogical, as the trial court even concluded, as to make it completely implausible. Thus, there can be no other conclusion that Cordaro, by misrepresentations and silence, fraudulently induced Dr. Chumley to move his home and divest him of ownership of the house, and the trial court committed manifest error in finding otherwise.
Initially, we must consider the relationship between the parties: Dr. Chumley, an octogenarian and career academician, and Cordaro, much younger and a real estate broker with over 30 years of experience in his field. It is not apparent from the trial court's reasons for judgment that it specifically considered this relationship, but we believe the relationship of the parties is an important consideration, especially as it concerns the claim of fraud in this case. See, e.g., Hickman v. Bates, 39,178 (La.App.2d Cir.12/15/04), 889 So.2d 1249. Dr. Chumley repeatedly stated at trial that he trusted his former student, whom he contacted in his capacity as a real estate broker. Moreover, and only because it has bearing on the relationship of the parties in this business deal, we are forced to take serious issue with the trial court's characterization of Dr. Chumley, whom the trial court described as "an astute, articulate gentleman in control of his mental faculties." (Emphasis added). The trial court's characterization of Dr. Chumley as "astute" is important, because it tends to indicate that Dr. Chumley and Cordaro were two businessmen entering into an otherwise equal business relationship, an arm's-length negotiation, where fraud was not at play. Notably, "astute" is defined as: "acute in perception and sound in judgment," "shrewd," and "marked by clever discerning awareness." See, Merriam-Webster Online.
We note that a trial court is in a superior position to observe the demeanor of a witness, and we mean no disrespect to this highly intelligent and educated octogenarian, Dr. Chumley. However, the cold record in this appeal shows that Dr. Chumley, a career academician, was not necessarily "astute," but quite the opposite, and this determination has a direct bearing on the relationship between the parties and the agreement between them. Specifically, we note that during Dr. Chumley's examination, the trial court had to redirect him nine times. At one point, Dr. Chumley noted "I'm getting confused. Just a minute, I'll get it straightened out." At another point, Cordaro's attorney pointed out that Dr. Chumley kept "going off on tangents." Finally, when asked about an early meeting with Cordaro, which he had already testified to, Dr. Chumley responded that his "brain is kind of screwed up with all this.... I'm trying to absorb ... your question and get it straightened out in my mind." Notably, Barbara, Dr. Chumley's daughter, wrote Cordaro a letter in July 2004, regarding the move of her father's house in which she remarked that "My dad is just not himself[.]" Thus, we take issue with the trial court's characterization of Dr. Chumley as "astute," which is relevant to his state of mind, his ability to deal with Cordaro on an equal footing, and the one-sidedness of the relationship between the parties.
Moreover, we consider that Cordaro was acting originally in the capacity of a real estate broker (i.e., at the beginning *683 of their contact, he showed Dr. Chumley property presumably to purchase), and in that capacity had a duty to Dr. Chumley. Notably, Dr. Chumley also wrote at least one check to Cordaro's real estate company, Today's Realty, Inc. The precise duties of a real estate broker must be determined by an examination of the nature of the task the real estate broker undertakes to perform and by the agreements the broker makes with the involved parties. Tres' Chic in a Week, L.L.C. v. Home Realty Store, XXXX-XXXX (La.App. 1st Cir.07/17/08), 993 So.2d 228. A duty to refrain from knowingly making any false representations to any party in a real estate transaction is among a broker's duties inferred from La. R.S. 37:1455 and from the customs and practices of real estate brokers in general. Id. Moreover, a real estate agent/broker should not use his position to gain an advantage over his client, as Cordaro clearly did here. Considering that the consequences in this transaction between Cordaro and Dr. Chumley were serious, i.e., Dr. Chumley would be divested of ownership in his home, Cordaro had an absolute and unequivocal duty to Dr. Chumley, before one brick was moved, to ensure that Dr. Chumley was completely informed and in agreement. Also, we question why Cordaro, presumably an expert in real estate matters, would not have reduced such an agreement to writing.
In light of the relationship between the parties, we consider their actions. As to Dr. Chumley, there is no evidence that he ever intended to transfer ownership of his home. From the start, Dr. Chumley's actions show his sole intent was to find a lot to move his home onto. Notably, Dr. Chumley stated he almost changed his mind about selling his property to La. Tech because, according to Dr. Chumley, the university intended to tear down his home and put in a parking lot. However, when La. Tech told him he could keep the home he had lived in since 1958, he agreed to selling the lot. Before Dr. Chumley ever met with Cordaro, he consulted another real estate agent in an attempt to find a lot onto which to move his home. When she could not help him with that precise goal, Dr. Chumley met with Cordaro, who had been his student years before. Early on, Cordaro broached the idea of the limited right of habitation to Dr. Chumley and his wife regarding his longtime home, and both Chumleys testified that they were not at all interested in Cordaro's suggestion. With that option off the table, the only reasonable interpretation of Cordaro's actions was that both parties anticipated him to convey the lot to Dr. Chumley. Notably, Cordaro even described at trial the process he went through with Dr. Chumley before moving his home, and noted, "he just kept coming back to wanting his house, he had been there since the, you know, '50s or '60s...."
Further, we consider Dr. Chumley's payments to Cordaro. It is unfathomable that Dr. Chumley, after paying Cordaro $115,000.00, would have thought anything other than he would retain ownership of his home and Cordaro would convey ownership of the lot to him. Why would an elderly man pay someone $115,000.00 for the right to live in a home he already owned? It makes utterly no sense that Dr. Chumley would voluntarily pay $115,000.00 in cash plus the house itself (which had a monetary value as well) to Cordaro only to receive the right to continue living in his own home for what he realistically recognized would not be very long.
As to Cordaro, when considering his testimony at trial and his actions throughout, his version of the transaction does not ring trueeven on the cold record. First, we note that Cordaro's testimony was evasive *684 and non-persuasive. He did not appear to remember much surrounding the transaction. The trial court noted that none of the key assertions by Cordaro were corroborated, including Cordaro's version of the facts that the men had an understanding regarding the right of habitation. Interestingly, Kathie Cordaro was not called as a witness at trial to corroborate Cordaro's testimony, despite the fact that he testified to specifically informing her of the deal so she would have knowledge of the Chumleys' right of habitation. An affidavit by Kathie Cordaro seems to indicate otherwise, and she swears that "[a]lthough [she]was aware that the residence was being moved to its present location, she had no other knowledge of any of the details of the transaction and had no discussions with any of the parties involved regarding the transaction until after the filing of the petition in this proceeding." Even Kathie Cordaro seems to dispute her husband's position.
Cordaro's testimony makes clear that he had a far better understanding of real estate law than Dr. Chumley, and he clearly understood the legal ramifications of putting Dr. Chumley's home on his lot, as he testified, "I own the lot. We're going to put their house on my lot. I consider it to be a movable. As far as I'mI didn't think it was necessary on my end of it that we had something in writing." (Emphasis added).
Furthermore, the lack of transparency in Cordaro's actions with Dr. Chumley shows Cordaro's intent regarding the houseto shoehorn the Chumleys into accepting the right of habitation, which they opposed from the beginning. First, just Cordaro's act of taking $115,000.00 from Dr. Chumley, when in fact he had spent far less than that on the move of the house, raises great suspicion as to the purity of his motives. Cordaro surely had some idea that he had collected far more money from Dr. Chumleyprecisely twice as much as he had spent for moving the house. In fact, just the act of taking excess payments from Dr. Chumley, when in fact Cordaro knew or should have known they were not due, is questionable in and of itself. Moreover, it was not until Dr. Chumley filed this litigation that Cordaro returned the excess amount collected, even though he knew he had overcharged Dr. Chumley. Second, Cordaro's reluctance to provide Dr. Chumley with an accounting further indicates that Cordaro was hiding something. Dr. Chumley had to request repeatedly an accounting of his funds.
Considering the record, it is unfathomable that Dr. Chumley knowingly entered into such a one-sided agreement with Cordaro. We cannot see him doing so under any circumstances, other than by fraudulent inducement. Why would Dr. Chumley pay a huge sum of money to move and renovate his home, only to have it owned in the end by someone else? Such an action is completely illogical and implausible and not only that, flies in the face of Dr. Chumley's expressed intent. It is evident that Dr. Chumley would have never moved his home onto Cordaro's lot had he known Cordaro's intention. In the end, we can only conclude that but for Cordaro's misrepresentations and silence, Dr. Chumley would have never moved his house to Gains Street. Cordaro acted fraudulently by using his position of trust with Dr. Chumley to obtain an unjust advantage and deprive Dr. Chumley of ownership of his longtime home. The trial court erred in determining otherwise.
As a result of this determination, we conclude that the trial court erred in not ordering Cordaro and his wife, Kathie, to convey the Gains Street lot to Dr. Chumley, giving him full ownership of the *685 house and lot as prayed for. We also conclude that Cordaro is entitled to keep the funds that were properly collected and expended by him in connection with the move of the house. We do not find the trial court's conclusion regarding Cordaro's expenditures to be in error. The trial court accepted Cordaro's accounting for amounts paid in the amount of $57,470.76, less and except three items: (1) $500.00 for a professional survey of the property; (2) $750.00 for sod on the lot before the house was moved there; and (3) $400.00 unspecified. However, we will allow the $500.00 expense for the survey, as it now benefits Dr. Chumley, but will not allow $1,150.00 for the other two expenditures; thus, that amount will be refunded to Dr. Chumley.
Finally, considering our findings herein any discussion of the additional assignments of error raised by Dr. Chumley is pretermitted.

Answer to Appeal
In his first assignment of error, Cordaro argues that the trial court erred in its calculation of the amount due to Dr. Chumley for quantum meruit. Considering our determination herein, the award of quantum meruit is no longer relevant, but Cordaro precisely argues that the trial court used the wrong value for the lot. We agree with the valuation used by the court, i.e., the value assigned was for the lot in an unimproved condition; thus $6,000.00 is the correct amount.
The trial court also ordered Cordaro to pay legal interest on the amount he refunded to Dr. Chumley, $57,529.24, after this lawsuit was filed. The trial court calculated the interest amount of $5,263.43 from the date the "overcharge" occurred, July 22, 2004, until judicial demand, February 6, 2006, which Cordaro argues was in error.
As of July 22, 2004, Cordaro had collected excess funds from Dr. Chumley, which resulted in an obligation by Cordaro in favor of Dr. Chumley. Additionally, Dr. Chumley repeatedly requested an accounting from Cordaro for the payments he had made, which Cordaro refused to comply with. As a result, Cordaro had use of Dr. Chumley's funds as of July 22, 2004, and as of that date, those funds were due and payable to Dr. Chumley. We do not consider it error for the trial court to have ordered the payment of legal interest on the amount of the overpayment, which was $57,529.24, from the date the overpayment was made. See La. C.C. art.2000. We find no merit to this assignment of error and allow the award to stand.
In his final assignment of error, Cordaro also argues that the trial court erred in taxing as costs expert fees in the amount of $3,355.50 to Dr. Chumley's certified public accountant expert, Susan Whitelaw. Dr. Chumley hired Whitelaw to review the money trail in this case, but Cordaro argues that a lay person could have easily accounted for the money, and the award was in error. A court has authority to render a "judgment for costs" and "[c]ourts have great discretion in assessing court costs." Aucoin v. Southern Quality Homes, LLC, XXXX-XXXX (La.02/26/08), 984 So.2d 685, citing, Cajun Elec. Power Co-op. v. Owens-Corning Fiberglass Corp., 616 So.2d 645 (La.1993); La. C.C.P. art. 1920. Expert witness fees are taxed as costs and, once fixed, form a part of the final judgment under La. R.S. 13:3666. Id. Here, as determined by the trial court, Whitelaw "rendered an opinion as to whether the records did or did not verify the amounts claimed to have been expended. The Court finds that her testimony was pertinent, relevant, helpful, and accorded significant weight because of her *686 expertise." We see no abuse of discretion in the trial court's award to Whitelaw.

CONCLUSION
For the foregoing reasons, we conclude that Frank Cordaro fraudulently induced Dr. J. Gale Chumley to move his house to the vacant lot located at 1303 Gains Street, Ruston, Louisiana owned by Frank and Kathie Cordaro, and we reverse the trial court's judgment as it pertains to the claim of fraud. So considering, it is the judgment of this court that Frank and Kathie Cordaro convey the property located at 1303 Gains Street, Ruston, Louisiana to Dr. Chumley for its appraised value of $6,000.00.
Furthermore, the trial court's judgment awarding Dr. Chumley $64,000.00 in quantum meruit is reversed. The trial court's award for interest is affirmed, but the award for unaccounted expenditures is amended from $1,650.00 to $1,150.00, which Cordaro will refund to Dr. Chumley. Additionally, the award for expert witness fees in favor of Dr. Chumley is affirmed. Finally, considering our findings herein, that portion of the judgment ordering Dr. Chumley to pay rent to Cordaro and to vacate the property is reversed. All costs of these proceedings are assessed to the defendants/appellees.
REVERSED IN PART; AMENDED IN PART, AND AS AMENDED, AFFIRMED.

ON REHEARING
Before BROWN, GASKINS, PEATROSS, MOORE and LOLLEY, JJ.
PER CURIAM.
The rehearing application in this case is granted for the limited purpose of addressing plaintiff's request for attorney's fees. The record reflects that a great deal of work was involved in trying this case including investigating, preparing for trial, the trial itself, and work on this appeal. For the foregoing reasons, we award plaintiff, J. Gale Chumley, attorney's fees in the amount of $25,000.00.
REHEARING GRANTED; JUDGMENT AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] Helen Chumley had no ownership interest in the house. The house had belonged to Dr. Chumley and his previous wife who predeceased him. Dr. Chumley had three children who apparently renounced their ownership interest in the house upon their mother's death. Kathie Cordaro, Cordaro's wife, had a one-half community property interest in the Gains Street lot, but she apparently was not involved in the transaction with Dr. Chumley.